May it please the court, Mr. Edwards. My name is Scarlett Stewart and I'm representing appellant plaintiff Gordon Wood in this matter. We're here today about a defective RV that was not timely repaired under Winnebago's warranty. Where the issue at fact is the district court granted summary judgment on both March 23rd, 2020 and November 30th, 2020. And Mr. Wood is asking this court to reverse both those decisions and remand this case back to the district court for the appropriate proceedings. The underlying facts in this case about the RV, when it was purchased, whether it had a warranty, where it went for warranty repairs, what warranty repairs were performed, that is substantially not in dispute. This dispute revolves around whether that evidence shows that plaintiff complied with his warranty obligations and whether Winnebago breached its warranty obligations. Here, the district court erred by engaging in fact finding on at least four key issues. First, whether Mr. Wood substantially complied with the written notice requirement in Winnebago's warranty. Second, whether Winnebago's authorized dealers were agents for purposes of warranty repairs. Third, whether Mr. Wood provided Winnebago and its authorized dealerships with a reasonable opportunity to cure the RV's defects. And fourth, whether Winnebago's pre-sale representations were more than puffery and supported by credible evidence. The district court also erred. Can you address specifically how you think you established a triable issue to show that he provided the written notice and an opportunity to Winnebago to repair the motorhome prior to claiming a breach of the warranty? Yes, Your Honor. The written notice requirement in the warranty, the purpose of that is so that Winnebago is put on notice that the owner is having issues and be permitted an opportunity, if it wishes, because there is the word may in there, to repair this RV either at its service center or its factory. Here, there's evidence that both Mr. Wood and his counsel provided that required notice, both in writing. To understand it factually, your client took the vehicle to an authorized Winnebago dealer, correct? Correct. And said, here's my vehicle, I'm having problems with it, fix it. Correct, and provided a list to them, yes. Is it your position that the mere act of taking it to an authorized dealer and asking them to examine the vehicle and determine if it had defects satisfies the condition of the warranty that my colleague just read to you? About the written notice requirement, no, I do not think that act by itself is meeting that requirement. I think there's two different things that are required of the owner. One, that he takes it in to an authorized dealer when it needs repaired. Which he did. Which he did, and that's step one. And then step two is if he's unsatisfied with those repairs, or the repairs are otherwise inadequate, that's when this notice requirement comes into play where Winnebago wants to know if you're having a problem so that it has the opportunity to intervene. So we're really talking about that second step in this case. And when- I thought that your client wrote to, well, I agree with you and Judge Hawkins, it seems to me the vehicle was presented for repair to an authorized dealer. There was a list of 20 defects that were provided. But before the repairs were finished and he received his vehicle from Camping World, he wrote directly to Winnebago. And that's what upset the natural flow of the warranty process, wasn't it? I don't believe so, because Mr. Wood was having an issue with the authorized dealer. That was getting repairs done in a timely manner. Any obligation under a warranty, both sides have an obligation to act reasonably. And here, he was not getting repairs done in a reasonable manner. That is why then he- Why didn't he take an action against Camping World? Because Camping World was acting on behalf of Winnebago at this point in time. But they had his vehicle. They had his vehicle. And if he wanted it back, he should move against them. They don't have any liability in this case because- They certainly do if they're holding onto his vehicle for an extended period of time that he's not getting back. I disagree, Your Honor. Under 15 U.S.C. 2307, it states that a warrantor, so Winnebago can designate an authorized representative to perform warranty repairs on its behalf, but that designation does not relieve the warrantor of its direct responsibility to the consumer. So here, Winnebago, like many vehicle dealers or manufacturers, designate a dealer, tell you to go to the dealer to get those warranty repairs. This would be akin to taking your Ford into the Ford dealership, the Ford dealership keeping it for an excessive amount of time to do warranty repairs. And then trying to sue the dealer for that. That's not their problem. That's the manufacturer's problem. Okay. It's the manufacturer's problem if warranty process is complied with and the dealer or the authorized representative doesn't repair or insufficiently or improperly repairs the vehicle. And then when the purchaser and the owner gets the vehicle back, they can certainly go against Ford. But here, and in the case where you're talking about Ford, if an individual is unhappy with the dealership or the repair center keeping their car to go to Winnebago, then triggers, and I think that's unfortunately what happened to your client here, that triggers legal obligations and ramifications with the manufacturer that were unforeseen because he didn't give Camping World the opportunity to get the car back, force Camping World to send the vehicle back with the repairs that he was satisfied or dissatisfied with. And I respectfully disagree, Your Honor, and that is because of this written notice requirement. Winnebago's saying, hey, if you're having a problem, let us know. And that is what Mr. Wood did. The warranty, and feel free to correct me if I'm wrong, is a two-step procedure, as I understand. One is written notice to Winnebago of defects in the vehicle, correct? The two-step... Let me finish, and your argument is that the letter from counsel, et cetera, satisfied that prong. Satisfied the second prong about the written notice. The second prong is an opportunity on Winnebago's part to correct the defect. Is that right? Is that correct? Am I stating it correctly? I do not agree that you're stating it correctly, and that is because the warranty states that you would have to give them notice and provide an opportunity, and they may require you to bring it in to the factory or a different dealer. So you need to... That's the language I am focusing on for my question. Okay. Provide an opportunity. Did your client do that? I believe so, and that is because... What did that consist of? It is that he put them on notice with those letters and waited several... Provide an opportunity. Tell me what your client did to provide Winnebago with an opportunity. He put out there that he was having problems and asked for assistance. He then waited four to five months, depending on which letter you're looking at, for Winnebago to respond. They admit that they got that letter and didn't do anything. Okay. Well... I guess this is my turn to respectfully disagree with you because, candidly, I don't see how Mr. Wood could have given Winnebago an opportunity to respond and correct if he hadn't received the vehicle back and didn't know what the defects were. That's why I say I think he jumped the gun to his own detriment a little bit here. And if I may address that point specifically. So, Winnebago was to act reasonably in responding to that request. Mr. Wood cannot force Winnebago to take this vehicle to its factory. Winnebago had the opportunity when it was put on notice to say, okay, there's an issue. We want to step in and correct it. It had that notice. It chose to do nothing. Mr. Wood cannot say, take it to your factory. He cannot force that to happen. So, at one point, Winnebago has to step into this process. If it wants to avoid any potential breach of warranty liability, it's given an opportunity to step in. And Mr. Wood provided months for them to do that. This wasn't a matter of where he provided a letter and two weeks later, he's in court. They had months. But the two letters that I'm looking at here, the first letter says it's been in the shop for four months. It's taking too long. And doesn't ask, it just said, generally, this shouldn't be acceptable help. And doesn't say, you know, take it over, do the repairs, do something else. It just, I would take it that it says, tell your dealer to get on the ball. And then the next letter from the attorney doesn't ask for repairs. It just says, we want the vehicle to be repurchased. And so that isn't an off request or an opportunity to repair the vehicle. It's a demand to take the vehicle back. So where is, in the written submissions to Winnebago, the opportunity for Winnebago itself to make the repairs? There are no magic words that the court is looking for. And that is the question of fact that the jury should be deciding as to whether that notice complies with this obligation. I would, your honors, like to reserve at least a couple minutes for rebuttal. Thank you. So we'll hear now from Mr. Edwards. May it please the court, my name is Mike Edwards and I represent Winnebago in this matter. Speak right up. Thank you, your honor. This case is about the limited- Did Winnebago ever respond to these letters and in particular to the first letter that Mr. Wood wrote himself? We were never provided an opportunity to respond or reply before the court or being put on notice. Did he get the address wrong? Did it not show up? The second letter made it to Winnebago, but there's express contraction. Did the first letter, is it misaddressed? The first letter that was sent while the vehicle was being repaired at Camping World made it to Winnebago. It did make it to Winnebago. Yes, it did. And then they just ignored it. No, they did not just ignore it. What response did they give to that letter? Any response? There was no response necessary because they were- No response is necessary when someone says, my vehicle is four months in the shop and it's got all these problems that are detailed and this should not be acceptable to you. No response is warranted to that? It was being repaired by the authorized dealership at the time and they were cosmetic repairs. These were not repairs as if they were mechanically broken down on the side of the road. It doesn't matter what the nature of the repairs being performed at that precise moment. At this precise- Can I finish? Winnebago could have responded by saying what you just said. The vehicle is at an authorized dealership. It is being repaired right now. Tell us if you have any other problem. There was no response. The response was that the vehicle was being repaired. The first letter- They didn't even say that, did they? The first letter was only complaining about the length of time the vehicle was in the shop. That is something that is entirely within the control of the owner because as I said, nothing about the vehicle and the complaints at that time were substantial or made the vehicle inoperable. As mentioned earlier, this individual could have gone and to the shop and picked up the vehicle and drove away with the vehicle while the parts were being ordered. The first letter was- Let me, let's assume he did that and wrote both of these letters. Then you'd be on the hook, right? Absolutely, absolutely not. Both letters, the timeline is critical here. It is absolutely fatal to plaintiff's underlying complaint and the appeal. Both letters written were written while the vehicle was in the shop for repairs. Right. The warranty- Let's say he gets the vehicle back, either by picking it up or completion by the repair facility. He writes a letter and says, this took an incredibly long amount of time. I want Winnebago to know it's unacceptable, number one. Number two, these additional defects remain in the vehicle. That seems to me to state an appropriate claim for warranty liability. I would agree, but that's not the factual situation we have here. What we have is Mr. Wood picks up the vehicle, drives it to British Columbia, decides on his own that he thinks some of these cosmetic defects still exist. And instead of notifying either the repair shop or Winnebago, he simply drives it to his business in Las Vegas and parks it out back and washes his hands of the situation. Now, if the facts had been as you just described and he gets back- That's after the second letter, right? Sorry? There's only one opportunity to repair. There's only one opportunity to repair and he picks up the vehicle after that. I'm still, you know, the first letter, because the second letter asks that the vehicle be repurchased. Repurchase, yes, it does. But the first letter just says there's a lot of things wrong with the vehicle. Here's the list. So that's the written list required by the warranty. It says I'm really unhappy and it's taken four months. And this is not, you know, a $40,000 vehicle. This is a very substantial investment. Very sophisticated house on wheels, yes. And I'm just surprised that even a part maybe from the legal algorithm, I'm surprised that Winnebago thinks that the appropriate response to receiving a letter from somebody like this who makes a purchase like this is to blow them off. They weren't being blown off. They were having their vehicles serviced. He didn't respond to this letter. Did he get any response? We've heard you. We are going to contact the dealership. We're going to do something. Nothing at all? There's nothing requested. He's simply complaining about the length of time it's in the shop. He complains. He gives the service advisor the telephone number. He gives his telephone number. He gives his address. A simple, I mean, you know, maybe it's just not a very well-run company. And that's in January. That just ignores letters like this, but. He writes his first letter in January complaining about the length of time while the vehicle is being repaired. He then, two months later, writes his second letter not requesting that repairs be done because it's still in the shop. So he wants it purchased back before he even knows whether or not any of the defects he's complained of have been repaired or repaired unsatisfactorily. And it's after he picks up the vehicle in July that he drives it to British Columbia and back and parks it without ever again contacting Winnebago. The question I have is why isn't the first letter sufficient to allow a trier of fact to conclude that Winnebago has been asked and offered to provide the repairs? So he's satisfied the condition of saying, of the warranty, of saying I'm unsatisfied with what the designated dealership has done. And here's the list. And we don't have to use magic words, but you could read from this letter, it's help. Please help me out. That's the final sentence of the letter. Why isn't that a trier of fact could say then that triggers the opportunity or affords an opportunity to repair the vehicle and therefore satisfies the condition before he later claims the breach of warranty? Because as a matter of law, that is not what is required under the limited warranty that Mr. Wood and Winnebago expressly agreed to. The terms of the warranty require that repairs be completed first. So before the repairs are even completed, these two letters come out. So that's not in compliance with the warranty. The warranty says, we get a chance to service and repair your vehicle. So that's a threshold step that has not been met when both these letters get sent out. And then step two of the warranty says, if the repairs completed are not- Let me interrupt you on step one, because why isn't the warranty reasonably construed as including a condition that the repairs be done in a reasonable period of time? I mean, can you take three years to do the repairs and then say, well, you can't claim a warranty because we're not finished yet? Well, the supply chain often takes a long time for these vehicles. At some point, there's a limit. At some point, there could be a limit. Maybe four months is enough for a jury to say you've exceeded the limit. That's not what the express terms of the limited warranty allow for. So what is the limit? Can we all agree three years is too much? You can't take three years and say you can't- I think it would depend on the circumstances, Your Honor. If it's solely within the exclusive control of a dealership or an authorized repair center, that could be an argument. However, if the repair is being done- It was because at the time he wrote the first letter, they still had the vehicle, right? But it wasn't inoperable. He could have gone and picked it up whenever he wanted to, if he wanted to drive that vehicle. It was operable. It's not like the air conditioner was broken and you're trying to drive between Vegas and Phoenix. The issue is whether there's, under the warranty, the issue is whether there's a reasonable opportunity to make the repairs, and now we agree that it's in a reasonable period of time, and maybe four months exceeds that. There's nothing in the express agreed-to warranty. The contract that is at issue that puts that kind of timeline on the length of repairs or the cause of repairs, which again, is one of the problems we have with this appeal is that they appeal from the two summary judgment orders, and yet in the actual appeal, don't expressly state what the errors actually are. They say, well, we think that the court is wrong, but they never went and did a motion for reconsideration. And the underlying trial court actually looked at this case on two separate occasions, and so if there were errors or there was a triable issue of fact, as you raise on a potential timeline, which is not in the warranty, the district court certainly had the opportunity to address that and identify that as a triable issue of fact, and the court- You talked about the fact pattern and the delay in the letter in terms of the limited warranty. And my understanding is that the, obviously the limited warranty is a contract between the purchaser and Winnebago, right? That is correct. So what would be your response to my suggestion that the delay was violative of the overall thrust of the Magnuson Moss Warranty Act that promotes good faith and fair dealing and would seem to create some sort of potential opening for actionable delay of the sort that Judge Collins was speaking? Well, because this is a limited warranty action, the Magnuson Moss Act does allow for someone to bring a federal action under that. However, the Magnuson Moss Act does not create any kind of remedy in this case. So they are reliant upon state law causes of action, a breach of contract and breach of warranty. What is the contract? The contract is the limited warranty that is expressed and agreed to. It allows Winnebago the opportunity to repair defects that were not repaired correctly the first time. And that's the essential step that Mr. Wood skips to his detriment. In order for these letters to have any force or effect, he would have had to have waited until he took possession of the vehicle post-repairs and then identified that those repairs were not done or were done improperly. I didn't want to interrupt your statement, counsel. We seem to agree that under the terms of this warranty, which both parties agreed to, was it's a two-step process. One, notice, and two, opportunity to repair. Reasonable opportunities. Is it your client's position that the first letter did not satisfy the notice requirement? That is correct, because the repairs had not been done. Let's just assume for the purpose of argument, I don't know what we're going to do when we go through this case. Let's just assume that the first letter satisfies, at least for a tribal issue of that, the notice requirement. Are you saying that Winnebago satisfies the opportunity to repair by doing absolutely nothing? The vehicle was not repaired at that point. The contract and the Madison Moss. They get this letter and... But we get a chance to fix the vehicle. Don't interrupt me, please. It seems to me that a responsible organization that has designated Camping World as their authorized representative gets a letter like this. They pick up the damn telephone and call the place and say, the guy's got a problem, can you fix it? And then you tell the person that's purchased this multi-hundred thousand dollar vehicle, I've contacted the Camping World, they're on it. If there's still a problem, let us know. That never happened. What about hypothetically, all the repairs were done perfectly? He picks up the vehicle and everything's done perfectly. That's, we wouldn't be here, right? But he missed, well, we don't know that because he never gave Winnebago an opportunity to conduct the repairs, which is at essence the meaning and purpose of the Madison Moss Act. The language that's in the warranty, and let's just put this side by side with the first letter, which I want to focus on. In the event you feel the repairs made by an authorized service center failed or are otherwise inadequate, and it seems to me that a failure that has seasonably conducted and accomplished the repairs in four months is a long period of time, he expressed that he felt that that was otherwise inadequate. You must contact Winnebago Owner Relations in writing, which he did, and advise them of the failure or inadequacy, which he did, including a list of the defects which he attached, and provide Winnebago an opportunity to repair the motorhome prior to claiming a breach of this warranty. So he says his unhappiness, lists all the contact information, please help me out. So is please help me out not providing Winnebago an opportunity to repair the motorhome? The vehicle was being repaired at the time that letter was sent. The whole thrust of the Warranty Act is that if repairs, once completed, are not completed satisfactorily. You just agreed with me that you can't take the position that you can take as much time, as infinite time as you want, that there's some reasonable limit, and at some point it's inadequate to not have accomplished the repairs. We're manufacturing this issue here today. That was never an issue in the underlying case. I'm reading the language and looking at the evidence, and you get to ask the questions, but we get to give the answers. It's not a multiple source exam for us. This was never an issue presented as a defect by the point of in the case. They claim that this letter meets the conditions, and I just put them side by side, and looking at the words, because I'm allowed to look at the words, they seem to line up. They unfortunately do not line up with the expressed terms and conditions of the limited warranty under which this case was brought. So your position, just to be clear, is that your client, Winnebago, had absolutely no responsibility to respond in any way to the first letter. They had responded by authorizing the service center to perform the repairs. You told us moments ago in your argument that they didn't respond. In writing, correct, except to the two points. Did they call Mr. Wood up? No, and there's no obligation to call Mr. Wood up. They authorized the repair to the authorized service center. That was the response. That was the only response necessary or required under the warranty. There's no requirement to respond by saying, we understand your vehicle is at the authorized dealership, and that it's been fully repaired. Do you have any problem with what they've done or anything like that? There is no affirmative obligation on the part of Winnebago to do that. The contract explicitly says, that is the responsibility, contractual obligation of Mr. Wood to do after receipt of the repairs. I think we understand your argument, and I've taken you over your time. Thank you. Can I just ask you one more question?  I understand that Winnebago didn't respond to him to the letter, but does the record say anything about, in response to the receipt of the first letter, whether Winnebago reached out to Camping World in any way? Oh, there's multiple correspondence between Camping World and Winnebago about performing these repairs under the warranty. After this letter, after the first letter and before the second letter? Specifically, if there was something between January and March. As I stand here today, I don't know, but I do know that there were constant communications between Winnebago as a manufacturer and the Authorized Service Center about repairs, parts, timing of the repair, production of the parts, and completion of the repairs and authorization of the repairs. Okay. All right. Thank you, counsel. All right, so we'll hear a rebuttal from Ms. Stewart. Thank you, Your Honors. In listening to Winnebago's position, it seems to be that they're asserting that since the RV was being repaired when that first letter was sent, it has no obligation to respond. And that in terms of- You answered the same question I just asked, is what does the record show about, in the period between the first letter and the second letter, about Winnebago's communications with Camping World? My recollection, Your Honor, is that there is no evidence that was presented to the trial court to say one way or another. I am aware that there are other records that exist that were not presented to the trial court, and I do not recall if those records that are not part of the record say that or not. Okay, so the summary judgment record before the district court and before us doesn't contain any evidence of communications from Winnebago to Camping World between the two letters? Correct. Does it contain such communications after the second letter? No, the record before this court does not have any communications between Winnebago and Camping World. Or any testimony about such communications? No, I don't believe there's any evidence of that. Not before the court. So with Winnebago's position about when the notice was sent and that it did not need to respond to Mr. Wood because it was already at the service center, that interpretation would render this notice provision useless because the whole purpose of this notice provision is saying, let us know if you're having any issues or you're having a problem so that we can intervene before a case might be filed. With defendant's interpretation, there wouldn't be that opportunity to step in. This is a warranty, a contract as we've discussed. Both parties have to act reasonably, and reasonably is historically and well-established a question of fact. And because of that, Mr. Wood would ask that this court reverse the two summary judgment decisions and remand this back to the district court. Thank you. Thank you, counsel. The case just argued will be submitted for decision and the court will stand in recess for 10 minutes. All rise.
judges: HAWKINS, COLLINS, Murphy